## Case No. 2,855.

### CLARKE v. JOHNSON.

[16 Blatchf. 495;[1] 4 Ban. & A. 403; 17 O. G. 1401.]

Circuit Court, E. D. New York. July 21, 1879.

PATENTS—"ELASTIC PACKING"—CONSTRUCTION.

The first claim of the reissued letters patent, No. 3,579, granted, August 3d, 1869, to Nathaniel Jenkins, for an "improvement in the manufacture of elastic packing," namely, "an elastic packing composed of at least four-tenths of finely pulverized refractory earthy or stony material, intimately mingled with, and held together by, rubber prepared for vulcanizing, and then vulcanized, as and for the purpose described," includes only soft vulcanized rubber, and does not include hard rubber, or vulcanite, so called, made of rubber mingled with 25 per cent., or over, of sulphur, and then vulcanized.

[In equity. This bill was filed by Thomas W. Clarke, trustee, etc., against John Johnson.]

Thomas William Clarke, for plaintiff.

· Alexander Cameron and James H. Gilbert, for defendant.

BENEDICT, District Judge. This action is brought to obtain an account and also an injunction to restrain the defendant from manufacturing and selling a certain kind of rubber disc used as packing for steam joints. The bill sets forth letters patent owned by the plaintiff, issued to Nathaniel Jenkins, and known as reissue No. 3,579, dated August 3d, 1869, for an "improvement in the manufacture of elastic packing." It also sets forth a decree rendered by the circuit court of the United States for the southern district of New York, in the year 1871, rendered in an action brought by the plaintiff against this defendant, upon this same patent. 9 Blatchf. 516 [Jenkins v. Johnson, Case No. 7,271]. It also sets forth a decree upon pleadings and proofs, rendered by the circuit court of the United States for the district of Massachusetts, on the 22d of March, 1872, in an action brought by this plaintiff upon this same patent against George W. Walker and another. 1 O. G. 359 [Jenkins v. Walker, Case No. 7,275]. General acquiescence is also averred, and infringement by the defendant.

The first claim of the patent sued on, which is the only claim here involved, is in the following language: "An elastic packing composed of at least four-tenths of finely pulverized refractory, earthy or stony material, intimately mingled with, and held together by, rubber prepared for vulcanizing, and then vulcanized, as and for the purpose described."

Upon this bill and certain affidavits, the plaintiff now moves for a preliminary injunction. The defendant reads, in opposition to the motion, his answer, in which the equity of the bill is denied, and he puts in

[1] [Reported by Hon. Samuel Blatchford. Circuit Judge, and here reprinted by permission.]

evidence, in support of his denial of novelty, a number of patents prior in date to the invention of Jenkins, and, in support of his denial of infringement, a number of affidavits, and he insists that this evidence either defeats the Jenkins patent entirely, upon the ground of want of novelty, or compels a construction of it so limited as to exclude from its scope the article which the defendant now manufactures.

In a case like this, where it appears that the patent sued on has been twice sustained upon final hearing, in contested actions, before different courts, in one of which the defendant was the same person who is defendant here, it can hardly have been expected, that, upon a preliminary motion like the present, a construction would be given in conflict with any construction given to the patent by the distinguished judges who were called on to consider the patent in the former cases set up in the bill. Neither would it, in my opinion, be proper to deny the present application because of any doubt in regard to the validity of the patent, that the defendant may consider to have been raised by the patents prior in date to the Jenkins invention or the rubber balls which have been now, for the first time, proved. For, these patents, now newly exhibited, and the prior manufacture of the rubber balls, could have been proved by the defendant in the former action against him, but were not then relied upon. No evidence has been here produced to show that any articles were ever made in accordance with any of these patents, except by way of experiment. Nor do the affidavits show the employment of the rubber balls for the purpose of resisting the action of heat in steam valves. Moreover, some eight years have elapsed since a decree was rendered against the defendant for an infringement of this patent. During all this period he has, as he says, acquiesced in the validity of the patent. During all this period it has occurred to no person that the patent could be defeated by the production of the patents that are now exhibited for that purpose, although packing was constantly made under the patent, and sold publicly as a patented article, during all this period.

Under such circumstances, I should have little hesitation in compelling the defendant to await a final decree before putting upon the market an article adapted for precisely the same purpose as the Jenkins packing, and very similar thereto in appearance, if his right to manufacture this article depended solely upon the question of the invalidity of the Jenkins patent for want of novelty. But another, and, as I view it, more serious ground of defence is the denial of infringement. This denial raises the question whether the Jenkins patent covers the packing which the defendant now seeks to make and sell. The nature of the defendant's present manufacture is not left in doubt, upon the affidavits, although the evidence in re-

gard to it is not, in all respects, harmonious.

The moving papers show valve seat discs made by the defendant, similar in form and general appearance to those made under the Jenkins patent, and adapted to accomplish the same purpose, viz., to constitute an elastic packing for steam joints and valves, that will render the valve tight and successfully resist the corrosive action of the steam. The moving papers also present an analysis of the defendant's discs, according to which they are compounded of the following elements, viz., rubber, 38.97 per cent.; sulphur, 7.23; bone black, 52.89; sand, dirt, .91. This analysis shows, according to the somewhat ambiguous statement of the plaintiff's witness, "a rubber packing compound consisting of more than 40 per cent., (including the sand,) of refractory mineral matter, with 52 per cent. of carbon and about 6 per cent. of surphur in a pulverized state, intimately incorporated with, and held together by, vulcanized india rubber or caoutchouc." The defendant denies that his discs are compounded as stated by the plaintiff's witness, and says that he never made, sold or used such a compound as the plaintiff describes, but that all the discs he has made for sale or use have been made upon the following formulas: para rubber, 10 lbs.; gutta-percha, 5 lbs.; sulphur, 4½ lbs.; bone black, 22½ lbs.—or para rubber, 14 lbs.; gutta-percha, 7 lbs.; sulphur, 6 lbs.; bone black, 28 lbs. These formulas the defendant says he has always used, except that he has sometimes slightly increased the quantity of sulphur, so as to bring it up to the proportion of 5 ounces of sulphur to 1 pound of rubber and gutta-percha together.

I suppose there is no good reason to doubt the truth of the defendant's statements as to the compound of which his discs are composed, and that the subject of the present controversy may justly be considered to be valve seats for steam joints, made as the defendant says he makes them. The question then first arising is, whether the decree rendered in the action between the same parties upon the same patent precludes all enquiry in regard to the right of the defendant to make and sell valve seats such as he says he is now making. Here the burden is upon the plaintiff; and, accordingly, he has exhibited the pleadings and decree in the former action between these same parties, together with an affidavit tending to show that the valve seat discs which formed the subject of such former suit were similar in character to the discs which the defendant now claims to be making. In opposition, the defendant produces two affidavits, tending to show that the subject-matter of the former suit was a disc differing in character from the discs now being made by the defendant, in this, that it contained a portion of oxides of lead, copper and tin, which, in the process of manufacture, absorbed a portion of the sulphur used, and that the compound, when vulcanized, consisted of a skeleton of refractory matter equal or exceeding 40 per cent. of the mass, mingled with, and held together by, the other portion of the mass, which other portion consisted of soft rubber. The formulas of the defendant, as above given, contain no metallic oxides, or other element capable of absorbing the sulphur in the process of manufacture, and produces a packing that consists of a skeleton of refractory material, exceeding 40 per cent. of the mass, mingled with, and held together by, the other portion, which other portion is vulcanite, as distinguished from soft rubber.

Vulcanite and soft rubber are different things, having different properties, and are in no sense equivalents. Vulcanite is produced when rubber is mingled with 25 per cent., or over, of sulphur, and subjected to the vulcanizing process. Soft rubber is produced when the sulphur mingled with the rubber is less than 25 per cent. This difference in the proportion of sulphur absorbed by the rubber, and this only, as I understand it, causes the difference in the product. The introduction of a portion of vulcanite, and the withdrawal of soft rubber from the compound, would, therefore, effect a substantial change in the article. Not only would the elements of the compound be changed in respect to the proportion of sulphur employed, but the result would be different. The proofs show, that the capacity of the compound to resist steam is greatly increased by such a change, and the packing is thereby rendered more efficacious.

It must follow, therefore, that if, in the compound that formed the subject of the former suit, the proportion of sulphur absorbed by the rubber in the process of manufacture was less than 25 per cent., the subject-matter of the former suit was substantially different from that here involved. It is impossible to discover, from the face of the record in the former suit, so far as here produced, what was the character of the disc involved in the proceedings. Upon the affidavits read, the weight of evidence is in favor of the defendant's contention, that the discs complained of in the former suit were so compounded that 25 per cent. of sulphur was not absorbed by the rubber, and that those discs did not exhibit any vulcanite, but were refractory material held together by soft rubber instead of vulcanite. Indeed, the bill filed in this action no where avers that the former suit relates to matter similar in character to that now complained of, and the bringing of this suit seems to indicate that the packing in question must be substantially different from that adjudicated upon in the former action; for, if the defendant had simply resumed the manufacture that was forbidden by the former decree, a new action would be unnecessary.

The burden being upon the plaintiff, and it not being made to appear that the matter now in controversy formed the subject of the

former suit, the decree rendered therein can avail nothing upon the question of infringement that is raised here. In so far as concerns the infringement charged, the present is, therefore, to be treated as a new case, dependent, for its determination, upon a question that did not arise in the former suit against this defendant, viz., whether a rubber packing compound, consisting of a skeleton of refractory material, forming at least 40 per cent. of the mass, the remainder being vulcanite, mingled through the mass, holding the same together, and forming an elastic packing capable of resisting the action of steam, is within the scope of the Jenkins patent.

This question does not appear to have received the consideration of any court, nor does any allusion seem to have been made to it in either of the cases referred to, where the patent was sustained at final hearing. There is, in the opinion delivered by Judge Shepley, the expression, "hard rubber," but I do not understand the reference to be to vulcanite. The phrase is used by Judge Shepley, as it has been here, by the plaintiff's counsel, to mean, not vulcanite, but rubber that is hard to compression. And I find no expression, in his opinion, indicating that his attention had been called to the question upon which this case, as I view it, must turn.

That question—to repeat it in a slightly different form—is, whether the invention of Jenkins, as described in his patent, embraces a packing composed of 40 per cent. and over of refractory material, mingled with, and held together by, vulcanite, so as to form an elastic packing capable of resisting the corrosive effect of steam. This is a question to be determined by the language of the patent, read in the light of the evidence in respect to the state of the art. The language of the claim in the patent has been already given, and seems clearly to be broad enough. Rubber, mingled with 25 per cent. and over of sulphur, and then vulcanized, is as plainly covered by the words, "rubber prepared for vulcanizing and then vulcanized," as is rubber mingled with less than 25 per cent. of sulphur. These words, taken by themselves, are broad enough to cover both compounds, but the difficulty is, that they must be read in connection with the words, "as described," by which words reference is made to the specification for the meaning of the phrase, "rubber prepared for vulcanizing," used in the claim. Turning, then, to the specification, it is found carefully to state the limits of the proportion of sulphur to be used, and fixes that limit at "from one to three per cent." In all places where the proportion of sulphur to be used is spoken of, the proportion is less than the proportion absolutely necessary if the product is intended to be vulcanite. The language of the specification, therefore, plainly excludes from the scope of the patent a compound where the proportion of sulphur used is such that the product is vulcanite.

The difference between vulcanite and soft rubber was well known to the patentee. Equally well known was the fact, that, by using less than 25 per cent. of sulphur, in combination with rubber, soft rubber is produced, and, by using 25 per cent. and over of sulphur, in combination with rubber, vulcanite is produced. If, therefore, Jenkins had considered his invention to include a packing where the refractory material was to be mingled with, and held together by, vulcanite, it is not conceivable that his specification would have fixed the limit of the sulphur to be used at from one to three per cent.

In behalf of the plaintiff, it is said, that Jenkins' patent does not provide that the formula should be simply of soft rubber, but the patent says: "With the following ingredients the proportion would be within the following limits," and then gives the limits of sulphur at "from one to three per cent." There is added the statement: "I do not confine myself to these exact proportions, but consider the composition most accurately stated by the limitations given before." These limitations exclude a composition which would produce vulcanite. This statement shows, that the idea of so compounding his packing as that it should be refractory matter mingled with, and held together by, vulcanite, had not occurred to Jenkins. Read in the light of the specification, the claim of the patent covers simply an elastic packing composed of at least four-tenths of finely pulverized refractory, earthy or stony matter, intimately mingled with, and held together by, rubber prepared for vulcanizing, by using less than 25 per cent. of sulphur.

This understanding of the patent derives support from the circumstance, that no evidence is produced to show, that, under the Jenkins patent, a packing has ever been produced where the refractory material was held together by vulcanite; and from the further fact, so strongly stated by various witnesses, that such a packing as the defendant now makes was never known until within a year, and that it will outlast all elastic packing previously known, and is considered, by those having occasion to use packing, to involve an important discovery in regard to the efficiency of vulcanite, when used in connection with refractory material, for the purpose of packing steam valves. Such an understanding of the Jenkins patent, as I have above stated, is fatal to the present motion, for the reason, that, according to the weight of the evidence, the defendant's packing is always so compounded as to furnish, for absorption by the rubber, more than 25 per cent. of sulphur, and, when vulcanized, never contains soft rubber, and invariably contains vulcanite, whence results, according to the affidavits, an article essentially different

from the article described in the Jenkins patent, not only being compounded in a different manner, but possessing different properties, and being more efficacious to effect the object sought to be attained by both articles than it is possible for the Jenkins packing to be. The motion for a preliminary injunction must, therefore, be denied.

[NOTE. On the final hearing, the bill was dismissed because of the failure of plaintiff to prove infringement. Clarke v. Johnson, 4 Fed. 437.

[For other cases involving this patent, see note to Jenkins v. Johnson, Case No. 7,271.]